UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALICIA C.,

                              Plaintiff,

v.                                                        6:17-CV-1235
                                                          (TWD)
COMM'R OF SOC. SEC.,

                              Defendant.

_____

APPEARANCES:                                              OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ                             PETER W. ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.                              ARIELLA R. ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>AMENDED DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Alicia C. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion

for judgment on the pleadings.  (Dkt. Nos. 13 and 14.)  For the reasons set forth below,

Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment

on the pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits

is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1961, making her 52 years old at the alleged onset date and 54 years old at the date of the ALJ's decision.  She reported completing two years of college, and has previous work as a self-employed tax preparer.  At the initial application level, Plaintiff alleged disability due to epilepsy and adult asthma.

### B.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on June 10, 2014, alleging disability beginning May 1, 2013.  Her application was initially denied on August 28, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  She appeared at an administrative hearing before ALJ John P. Ramos on March 3, 2016.  (T. 32-59. [1])  On May 20, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-23.)  On September 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.  (T. 12-19.)  Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2019, and she has not engaged in substantial gainful activity since May 1, 2013, the alleged onset date.  (T. 12.)  Her low back issue, seizure disorder, hearing issue, and

---

[1]    The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

asthma are severe impairments, but Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 12, 14.) The ALJ considered Listings 1.04 (disorders of the spine), 3.03 (asthma), 11.02 (convulsive epilepsy), and 11.03 (non-convulsive epilepsy). (*Id.* at 14.) Plaintiff has the residual functional capacity ("RFC") to perform light work except she should not work in a noise environment greater than medium; she should avoid crouching, crawling and climbing ladders/scaffolds; and she should not work at unprotected heights or have concentrated exposure to dust, odors, pulmonary irritants or temperature extremes. (T. 14-15.) Finally, Plaintiff is able to perform past relevant work as a tax preparer. (T. 18-19.) The ALJ therefore concluded she is not disabled.

### D.     The Parties' Briefings on Their Cross-Motions

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. (Dkt. No. 13 at 9-23.[2]) First, the ALJ erred in failing to give appropriate weight to treating provider Debora Lee, D.O., and in failing to properly analyze the medical evidence. (*Id.* at 9-19.) Second, the ALJ erred in failing to find her eligible for benefits for a closed period of time from May 1, 2013, through July 7, 2015, wherein Plaintiff argues her seizure condition would have met or equaled Listings 11.02 and 11.03. (*Id.* at 19-21.) Third, the ALJ erred in failing to obtain vocational testimony since her impairments include significant non-exertional limitations, including considerable off-task behavior and excessive absences from work as indicated by her treating primary care physician and neurologist. (*Id.* at 21-23.) Plaintiff also points out that consultative examiner Christina Caldwell, Psych.D., found Plaintiff evidenced mild limitations in

---

[2]     Page numbers in citations to documents identified by docket number refer to the page numbers inserted by the Court's electronic filing system maintained by the Clerk's Office.

her ability to make appropriate decisions and relate adequately with others as well as mild-to-moderate limitations in her ability to appropriately deal with stress. (*Id*. at 22.)

Defendant also makes three arguments in support of her motion for judgment on the pleadings. (Dkt. No. 14 at 6-22.) First, substantial evidence supports the ALJ's RFC because the ALJ properly weighed the medical opinions, properly assessed Plaintiff's statements, and the RFC for light work is supported by the record. (*Id*. at 6-18.) Second, the ALJ properly considered whether Plaintiff's seizure disorder met or equaled a listing and was not required to consider whether Plaintiff was eligible for a closed period of disability. (*Id*. at 18-21.) Third, the ALJ properly found Plaintiff was able to perform her past relevant work because the ALJ concluded the opinion from Lev Goldiner, M.D., pertaining to absences due to seizures was not supported by his report; and because the opinion from Dr. Lee pertaining to absences and time off-task was not supported by substantial evidence. (*Id*. at 21-22.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the

[Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Substantial Evidence Supports the ALJ's Analysis of the Listings and Overall Finding that Plaintiff was Not Disabled from the Alleged Onset Date through the Date of the ALJ's Decision

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*,

493 U.S. 521, 530, 110 S. Ct. 885, 107 L.Ed.2d 967 (1990)).  Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry*, 675 F.2d at 468).

Listings 11.02 and 11.03 both consider epilepsy and require the following:

> 11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 404, Subpart P, App. 1.

Plaintiff argues the ALJ erred in failing to find her eligible for benefits for a closed period of time because Plaintiff's seizure condition would have met or equaled Listings 11.02 and 11.03 from May 1, 2013, through July 7, 2015.  (Dkt. No. 13 at 19-21.)  The Court finds this argument unpersuasive for the following reasons.

First, the Court's review of the record supports the ALJ's analysis of Plaintiff's seizure disorder with regard to Listings 11.02 and 11.03, indicating Plaintiff did not meet the requisite criteria of either of these listings.  (T. 14.)  The ALJ indicated that Plaintiff had not presented documentation of the number and frequency of seizures required by these listings.  (*Id*.)  The

ALJ also noted Plaintiff stated at one appointment that she had not had any significant seizures and records indicated Plaintiff's seizures were controlled with medication. (T. 14, 237.) The ALJ subsequently noted Plaintiff retained her driver's license and continued to drive occasionally, which was completely contrary to allegations of disabling seizures. (T. 17.) He also noted her most recent EEG was normal and recent records indicated her neurologist had added a second medication with Plaintiff being seizure-free since that time. (T. 17, 366, 388.) Further, Plaintiff's treating neurologist Dr. Goldiner noted in October 2014 during the alleged closed period of disability that she reported no convulsions, but had episodes of staring spells and difficulty getting words out lasting a brief period of time. (T. 367.)

Second, Plaintiff's own reports of her seizure activity do not support a finding that her condition met or equaled the severity of either Listing 11.02 or 11.03 between the alleged onset date in 2013 and July 2015. Plaintiff's June 2014 function report supports the ALJ's finding that she did not meet the requirements of either Listing 11.02 or 11.03 during the relevant period. (T. 181-93.) For example, she indicated she had had three seizures in May 2014 and that she averaged 3-4 seizures monthly of varying severity. (T. 189.) She described her seizures as lasting for a few minutes with a loss of function on the left side, slurred/slow speech, confusion, and an inability to pronounce words followed by fatigue and confusion. (T. 190.) Plaintiff's testimony at the March 2016 administrative hearing is consistent with earlier reports as she indicated she was still having seizures a couple times a week despite taking Keppra, Vimpat, and Neurontin. (T. 39, 50-51.) While Plaintiff's seizures apparently occurred more than once a month a few times, as she described them, she did not lose consciousness or convulse, and she did not have alteration of awareness and transient postictal unconventional behavior or significant interference with activity. (T. at 42-43.)

For the reasons outlined above, the ALJ's analysis of Plaintiff's impairments with regard to Listings 11.02 and 11.03 is supported by substantial evidence and the ALJ did not err in failing to find Plaintiff disabled for a closed period of time during the relevant period. Remand is therefore not required on this basis.

**B.** **Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC**

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999) (internal citations omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. *See also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant

constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

### i.    *The Opinion Evidence*

The ALJ indicated the RFC was based on the opinions of Tanya Perkins-Mwantuali, M.D., Dr. Caldwell, consultant H. Tzetzo, and John Pella, M.D., and noted these opinions were

all given significant weight. (T. 15.) The ALJ also considered the opinions of Dr. Lee and Dr. Goldiner. (T. 15, 18.)

In June 2014, primary care physician Dr. Lee indicated Plaintiff met Listing 3.03 relating to asthma attacks. (T. 342.) Dr. Lee also opined Plaintiff had simple partial, localized seizures once a week with an average of five in three months, typically lasting 5-20 minutes without always having a warning of an impending seizure. (T. 343.) Dr. Lee opined Plaintiff could not always take safety precautions when she felt a seizure coming on, her seizures were more frequent when she was stressed, and others must watch/care for her and help her re-orient. (*Id*.) Dr. Lee indicated that postictal manifestations included confusion, weakness in the extremities, exhaustion, and slurred speech typically lasting for a day and that having a seizure severely interfered with Plaintiff's daily activities following a seizure. (T. 344.) She noted Plaintiff had one minor car accident during a seizure and listed medication including Keppra, with Plaintiff having been advised to increase her dose though she could not afford it. (*Id*.) Dr. Lee indicated Plaintiff was compliant with medication and opined that Plaintiff's seizures were likely to disrupt the work of coworkers. (T. 344-45.) She opined Plaintiff could not work at heights or with power machines that required an alert operator, but could operate a motor vehicle as Plaintiff had been driving. (T. 345.) She also opined Plaintiff would sometimes need to take unscheduled breaks during an 8-hour working day and her impairments were likely to produce good and bad days leading to about two absences a month. (T. 345.)

Dr. Lee also completed a medical source statement in June 2014 noting diagnoses including tympanic membrane perforation, esophageal stricture, epilepsy, asthma, anxiety, hyperlipidemia, and persistent insomnia with objective findings including an abnormal EEG on anti-seizure medications and an abnormal pulmonary function test on medications. (T. 346.) Dr.

Lee noted Plaintiff's symptoms included shortness of breath, chest tightness, wheezing, episodic acute asthma, fatigue, and coughing and precipitating factors included upper respiratory infection, irritants, and cold air/change in weather. (*Id.*) She indicated Plaintiff had moderate intermittent asthma attacks every two months and would be incapacitated for 2-7 days during an average attack. (*Id.*)

Dr. Lee opined Plaintiff should avoid concentrated exposure to extreme heat and cigarette smoke, avoid even moderated exposure to high humidity, and avoid all exposure to fumes/odors/dusts/gases, perfumes, soldering fluxes, solvents/cleaners, and chemicals. (T. 347.) She also opined that Plaintiff experienced weakness/fatigue/pain to such an extent as to be distracting to adequate performance of daily activities or work causing her to be off-task for at least 25 percent of the time in an 8-hour workday and that her conditions were likely to produce good and bad days leading to about two absences a month. (*Id.*) Dr. Lee opined Plaintiff had experienced side effects from steroids including insomnia, severe mood swings, and appetite dysfunction. (*Id.*) She opined that Plaintiff could stand/walk three hours or less before shortness of breath or fatigue caused a break from activity and that, on bad days, Plaintiff needed to lie down or recline every hour. (T. 348.)

The ALJ afforded less weight to Dr. Lee's June 2014 opinions, noting that Dr. Lee did not cite any medical evidence to support a finding that Plaintiff met a listing. (T. 17.) The ALJ also indicated the June 2014 opinion was contrary to records indicating Plaintiff's seizures were controlled with medication and contrary to the fact Plaintiff continued to drive and retained her license. (T. 17, 237, 388.) Dr. Lee cited absolutely no justification for Plaintiff being off-task 25 percent of the workday and noted Plaintiff specifically denied side effects from her medication.

(T. 17-18, 237.)  Further, Plaintiff's own testimony contradicted Dr. Lee's statement regarding the frequency and severity of her asthma attacks.  (T. 18, 53, 346-48.)

In August 2014, consultative examiner Dr. Perkins-Mwantuali noted Plaintiff appeared to be in no acute distress and had normal speech, gait, and station although she lost her balance on tandem walk which she attributed to a problem with the middle ear and eardrum that was repaired.  (T. 258.)  Dr. Perkins indicated Plaintiff had impaired judgment because she continued to drive despite knowing she should not be driving.  (T. 259.)  She diagnosed seizures with a history of car accident when having a seizure, asthma, anxiety disorder, abnormal mini mental status exam including impaired judgment and both short-term and long-term memory loss, and indicated a guarded prognosis.  (T. 259-60.)  Dr. Perkins-Mwantuali opined Plaintiff should not drive, should not be at unsecured heights, and should not handle heavy moving equipment.  (T. 260.)  The ALJ afforded significant weight to this opinion, noting Dr. Perkins-Mwantuali's professional expertise and indicating her opinion was consistent with her examination of Plaintiff which was essentially normal, diagnostic imaging showing no major issues, and Plaintiff's extensive daily activities.  (T. 15, 181-93, 407.)

In August 2014, consultative examiner Dr. Caldwell noted a diagnosis of unspecified anxiety disorder and medical diagnoses reported by Plaintiff including a seizure disorder and asthma.  (T. 264.)  Plaintiff did not evidence limitations in her ability to follow and understand simple directions and instructions, perform simple or complex tasks independently, maintain attention and concentration, maintain a regular schedule, or learn new tasks.  (T. 263-64.)  Plaintiff did evidence mild limitations in her ability to make appropriate decisions and relate adequately with others and mild-to-moderate limitations in her ability to appropriately deal with stress with the results of the evaluation appearing consistent with psychiatric problems that might

significantly interfere with her ability to function on a daily basis. (T. 264.) The ALJ afforded significant weight to Dr. Caldwell's opinion, noting it was consistent with her findings, Plaintiff's lack of mental health treatment, and consultant H. Tzetzo's opinion. (T. 16.)

As part of the initial determination in August 2014, non-examining consultant H. Tzetzo opined that Plaintiff had mild restriction of activities of daily living and mild difficulties in maintaining social functioning and concentration, persistence or pace with no repeated episodes of decompensation. (T. 65-66.) Plaintiff should be able to handle normal work procedures and that, psychiatrically speaking, her mental impairment was not severe. (T. 66.) The ALJ afforded this opinion significant weight, noting consultant Tzetzo's program and professional expertise and indicating this opinion was consistent with Plaintiff's lack of mental health treatment and her extensive daily activities. (T. 16.)

In April 2016, Dr. Pella noted impairments including asthma, seizure disorder, decreased hearing in the left ear, and low back to left lower extremity numbness/pain. (T. 477.) He opined Plaintiff's conditions did not meet or equal any listings and she could frequently lift/carry up to 10 pounds and occasionally lift/carry up to 20 pounds. (T. 477, 479.) Plaintiff could sit for two hours at a time for a total of six hours, stand for one hour at a time for a total of three hours, and walk for one hour at a time for a total of three hours. (T. 480.) She could continuously handle, finger and feel, frequently reach and push/pull, and frequently use her feet for the operation of foot controls. (T. 481.) She could occasionally climb stairs and ramps, balance, stoop and kneel and could never climb ladders or scaffolds, crouch, or crawl. (T. 482.) She retained the ability to hear and understand simple oral instructions, communicate simple information, and use a telephone to communicate. (*Id.*) Plaintiff could tolerate moderate office noise, frequently tolerate moving mechanical parts and vibrations, occasionally tolerate operating a motor vehicle

(but not commercially) and humidity/wetness, and never tolerate unprotected heights, dusts/odors/fumes/pulmonary irritants or extreme cold/heat. (T. 483.) The ALJ afforded this opinion significant weight, noting that Dr. Pella was a medical expert with program and professional expertise and that his opinion was consistent with Plaintiff's extensive daily activities. (T. 16.)

In April 2016, Dr. Lee noted Plaintiff's chronic back pain and seizure disorder and opined that she could not lift or carry any weight on an occasional or frequent basis, could stand and/or walk for one hour or less at a time without a break for a total of one hour or less, and could sit for one hour or less at a time for a total of two hours or less. (T. 490-91.) Plaintiff could never climb, kneel, crouch, crawl, or stoop and could occasionally balance. (T. 491.) She indicated pain, fatigue, and concentration deficits were present and found to be incapacitating causing Plaintiff to be off-task for at least 50 percent of the time in an 8-hour block of time. (T. 492.) Dr. Lee opined Plaintiff's impairments were likely to produce good days and bad days leading to absences more than four days per month. (*Id*.) The ALJ afforded Dr. Lee's opinions less weight and noted that there was simply no objective evidence in the record to support such extreme limitations as those in the most recent opinion. (T. 18.) The only diagnostic imaging in the record with regard to Plaintiff's back did not show anything significant and, in fact, there was not even evidence of a moderate problem. (T. 18, 407.) The ALJ also stated Plaintiff's treatment had been extremely conservative. (T. 18.)

In May 2016, treating neurologist Dr. Goldiner indicated he had been seeing Plaintiff for her seizures and headaches since January 2013. (T. 494.) He noted Plaintiff's seizures caused confusion and occurred 2-3 times per month with her last seizures occurring in April 2016. (*Id*.) Dr. Goldiner indicated Plaintiff always had a warning of an impending seizure and there was

usually five minutes between the warning and the onset of the seizure.  (*Id*.)  He also indicated she could not always take precautions when she felt a seizure coming on and there were no precipitating factors.  (*Id*.)  Postictal manifestations included confusion and severe headache lasting for a few hours.  (T. 495.)  Dr. Goldiner indicated Plaintiff was compliant with medications and opined she could not work at heights or with power machines that required an alert operator.  (T. 495.)  She could operate a motor vehicle and would be absent about three times a month.  (T. 495-96.)  The ALJ afforded this opinion some weight, noting that while the majority of this opinion was consistent with the record, the limitation with regard to absences was not.  (T. 18.)  The ALJ stated that the record indicated Plaintiff's seizure disorder was generally controlled and that Dr. Goldiner's indication Plaintiff could still drive a car would obviously be contraindicated if her seizures were not controlled.  (*Id*.)  The ALJ also noted Dr. Goldiner was a treating doctor who cited some evidence in support of his opined limitations.  (*Id*.)

### ii.      *The Court's Analysis*

Plaintiff argues the ALJ failed to properly weigh the opinion evidence from Dr. Lee, Dr. Perkins-Mwantuali, Dr. Caldwell, consultant Tzetzo, Dr. Pella, and Dr. Goldiner.  (Dkt. No. 13 at 9-23.)  The Court finds this argument unpersuasive for the following reasons.

First, the ALJ indicated that he considered the opinion evidence in accordance with 20 C.F.R. § 404.1527 and and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  (T. 15.)  Further, the ALJ's overall decision indicates a detailed consideration of the various opinions of record as well as the medical evidence, Plaintiff's testimony, and her activities of daily living.  (T. 15-18.)

Second, while Plaintiff appears to take particular issue with the ALJ's analysis of Dr. Lee's opinions, the Court's review does not support Plaintiff's arguments that the ALJ failed to

properly weigh these opinions from a treating source. The ALJ adequately summarized Dr. Lee's multiple opinions and sufficiently explained why they were given less weight. (T. 17-18.) In so doing, the ALJ provided reasons for the weight afforded to these opinions, including that Dr. Lee did not cite any evidence to support a finding that Plaintiff meets a listing pertaining to her asthma, and the opined limitations were contrary to records indicating Plaintiff's seizures were controlled with medication and the fact Plaintiff continued to drive and retained her license. (*Id.*) Dr. Lee cited no justification for the opined limitation that Plaintiff would be off-task 25 percent of the workday, there was no objective evidence in the record to support the opined limitations, Plaintiff's testimony contradicted Dr. Lee's statement regarding the frequency and severity of her asthma attacks, and Plaintiff's treatment for her back issue had been conservative. (*Id*.) Further, the ALJ was tasked with the responsibility of reviewing all the evidence before her, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *see also Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042

(GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), *Report and Recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing *Matta*, 508 F. App'x at 56).

Third, the Court's review does not support Plaintiff's arguments pertaining to Dr. Perkins-Mwantuali's or Dr. Pella's specialties, Dr. Pella's review of the record, Dr. Caldwell's opinions regarding an anxiety disorder, or any alleged mischaracterization by the ALJ of the evidence in considering Dr. Goldiner's opinion. (Dkt. No. 13 at 11-19.) There is no requirement that opinion sources have access to the complete record; and state Agency consultants and consultative examiners are experts entitled to weight. *See Stottlar v. Colvin*, 15-CV-0340 (GTS), 2017 WL 972108, at *7 (N.D.N.Y. Mar. 10, 2017) (noting that "a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinions 'or the ALJ's finding relying thereon'"); *see also* 20 C.F.R. § 404.1519n(c) (which does not indicate that reviewing a claimant's medical records is a requirement for a complete consultative examination); *Little*, 2015 WL 1399586, at *9 (indicating state Agency physicians are qualified as experts in the evaluation of medical issues in disability claims and their opinions may constitute substantial evidence if they are consistent with the record as a whole). The ALJ's overall decision indicates a careful analysis of the opinion evidence as well as the other evidence of record. (T. 12-19.)

Regarding Plaintiff's arguments pertaining to the ALJ's alleged failure to address Dr. Caldwell's findings of limitations from an anxiety disorder or find any severe psychiatric or psychological impairments despite affording Dr. Caldwell's opinion significant weight, it is well settled that an ALJ does not have to adhere to the entirety of one medical source's opinion when formulating a claimant's RFC. *See Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision,

18

he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). The ALJ properly considered the entirety of the evidence here, and considered multiple opinions from various sources to determine Plaintiff's credible limitations and the resulting RFC.

Further, the ALJ's decision includes sufficient analysis of Plaintiff's medically determinable mental impairment of an anxiety disorder which he concluded did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore non-severe. (T. 13.) ALJ Ramos set forth a detailed discussion of the four broad functional areas set out in the regulations for evaluating mental disorders. (T. 13-14.) The ALJ also noted that consultant H. Tzetzo expressed similar findings in the four broad functional areas including mild limitation in activities of daily living, mild limitation in social functioning, mild limitation in concentration, persistence or pace, and no episodes of decompensation of extended duration which were supported by the record. (T. 13-14, 65-66.) The ALJ subsequently indicated in his RFC analysis that consultant Tzetzo opined Plaintiff's psychiatric impairment was non-severe, noting the findings of the consultative examination in support of this conclusion. (T. 16, 66, 262-63.) This was consistent with Plaintiff's lack of mental health treatment and extensive daily activities. (T. 16, 55, 258.)

Finally, the Court will not now reweigh evidence which was before the ALJ. *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . . [Rather],

[a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), *Report and Recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence") (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). The Court finds the ALJ's analysis of the evidence before him supports his findings regarding Plaintiff's impairments and substantial evidence in the record supports the RFC.

For the reasons outlined above, the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence. Remand is therefore not required on these bases.

### C.    Substantial Evidence Supports the ALJ's Step Four Finding

"[T]he Commissioner asks, at Step Four, 'whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform . . . her past work.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000)) (internal citations omitted). "[T]he claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart,* 341 F.3d 182, 185 (2d Cir. 2003) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62).

After determining the RFC, the ALJ found Plaintiff capable of performing past relevant work as a tax preparer as she actually performed it, based on her own description of the job.  (T. 18-19.)  Plaintiff argues the ALJ erred in failing to obtain vocational testimony given that her impairments cause significant non-exertional limitations, including considerable off-task behavior and excessive absences from work.  (Dkt. No. 13, at 21-23.)  The Court disagrees.

As indicated in Section III.B.ii. of this Decision and Order, the ALJ's analysis of the opinion evidence and resulting RFC are supported by substantial evidence.  Plaintiff has not established that she has the extensive non-exertional limitations she alleges.  The ALJ's RFC determination indicates careful consideration of the evidence of record and reflects the credible limitations supported by that evidence.  As noted above, the Court will not reweigh the evidence before the ALJ.  *Warren*, 2016 WL 7223338, at *9; *Vincent*, 830 F. Supp. at 133 (citing *Carroll*, 705 F.2d at 642); *Lewis*, 122 F. Supp. 3d at 7 (quoting *Cage.*, 692 F.3d at 122; citing *Lamay*, 562 F.3d at 507).

Therefore, the Court finds the ALJ's Step Four finding is supported by substantial evidence.  Remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>** for all of the reasons stated above, **AND** because Plaintiff has failed to pay the filing fee as directed in Dkt. Nos. 7 and 17.

Dated: April 1, 2019
Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge